UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on March 13, 2025

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. **4:25-mj-453** |
| v. | : | |
| | : | VIOLATIONS: |
| | : | 50 U.S.C. § 1705 |
| **BAZILE RICHARDSON**, also known as Fredo Pam, Fred Lion, Leo Danger, Lepe Blode, and Fredo RICHARDSON, | : | (International Emergency Economic Powers Act) |
| Defendants. | : | |

## INDICTMENT

The Grand Jury charges that, at all times material to this Indictment, on or about the dates stated below:

### COUNT ONE
(Conspiracy to Violate the International Emergency Economic Powers Act)

### INTRODUCTION

1. From on or about December 10, 2020, until at least in or around January 2025, Defendants

and **BAZILE RICHARDSON** ("**RICHARDSON**"), also known as "Fredo Pam," "Fred Lion," "Leo Danger," "Lepe Blode," and "Fredo RICHARDSON," knowingly and willfully conspired with individuals in the United States, Haiti, and elsewhere to violate and cause violations of U.S. sanctions.

2. ⬛⬛⬛⬛⬛ is a Haitian national residing in Haiti who formerly served as an officer in the Haitian National Police. ⬛⬛⬛⬛⬛ founded the Revolutionary Forces of the G9

1

Family and Allies (the "G9 and Family") in June 2020 to unite nine gangs in Port-au-Prince, Haiti. He remains its current leader. In September 2023,            helped found the gang alliance Viv Ansanm—which he still leads as of the date of this Indictment—to unite Haiti's many criminal gangs in an alliance to oppose the legitimate government of Haiti. On May 2, 2025, Viv Ansanm was designated a Foreign Terrorist Organization ("FTO") by the U.S. Department of State and a Specially Designated Global Terrorist ("SDGT") by the U.S. Department of the Treasury.

3. RICHARDSON is a naturalized U.S. citizen from Haiti who resides in Fayetteville, North Carolina. RICHARDSON grew up in Haiti with            RICHARDSON communicated regularly with            as well as with other leaders of Viv Ansanm.

4. On December 10, 2020, the Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury sanctioned            and designated him as a Specially Designated National ("SDN") for his role in leading "armed groups in coordinated, brutal attacks in Port-au-Prince neighborhoods," including an attack in November 2018 in the La Saline neighborhood of Port-au-Prince which            "planned and participated in" and an attack in May 2020 in which            "led armed gangs in a five-day attack in multiple Port-au-Prince neighborhoods in which civilians were killed and houses were set on fire." As a result of this designation, U.S. individuals and entities, including financial institutions, generally are prohibited from engaging in transactions with or for the benefit of            absent approval from OFAC in the form of a license.

5. Since            designation as an SDN on December 10, 2020,            and RICHARDSON have led a wide-ranging conspiracy with individuals in the United States, Haiti, and elsewhere to raise funds for            s gang activities in Haiti in violation of U.S. sanctions. In particular            and RICHARDSON have violated U.S. sanctions by directly

2

soliciting money transfers from members of the Haitian diaspora located in the United States. ⬛ uses these funds principally to pay salaries to the members of his gang and to acquire firearms from illicit firearms dealers in Haiti.

6. ⬛ and RICHARDSON have at all times relevant to this Indictment had knowledge of ⬛ SDN designation and the sanctions against him. In particular, both ⬛ and RICHARDSON have made statements acknowledging the sanctions against ⬛

7. At no time did ⬛ RICHARDSON, or any of their known co-conspirators apply for or obtain a license from OFAC, which is located in the District of Columbia, to permit U.S. persons to provide funds, goods, and services to, and for the benefit of,

## LEGAL BACKGROUND

### *International Emergency Economic Powers Act and the Global Magnitsky Sanctions Regulations*

8. The International Emergency Economic Powers Act ("IEEPA"), codified at Title 50 U.S.C. § 1701 *et seq.*, authorized the President of the United States to impose economic sanctions in response to an unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat. Section 1705 of IEEPA provides, in part, that "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a). It also provides for criminal penalties for any

3

person who "willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a)." *Id.* § 1705(c).

9. The Global Magnitsky Human Rights Accountability Act, codified at 22 U.S.C. § 10102 *et seq.*, authorized the President to block or revoke the visas of certain "foreign persons" or to impose sanctions against persons responsible for "extrajudicial killings, torture, or other gross violations of internationally recognized human rights" or government officials complicit in "acts of significant corruption." 22 U.S.C. §§ 10102(a)(1), (3).

10. On or about December 20, 2017, pursuant to his authority under that statute and IEEPA, the President issued Executive Order ("EO") 13818, declaring a national emergency to deal with the threat to the stability of international political and economic systems posed by the prevalence and severity of human rights abuses and corruption. EO 13818 blocks the property and interests in property of individuals and entities listed in the Annex to EO 13818 or of those determined by the Secretary of the Treasury, after consultation with the Secretary of State and the Attorney General, to meet certain criteria set forth in EO 13818. As a result, such individuals and entities are identified on OFAC's public Specially Designated Nationals and Blocked Persons List ("SDN List").

11. On June 29, 2018, OFAC issued a set of regulations to implement EO 13818, the Global Magnitsky Sanctions Regulations (the "GMSR"), 31 C.F.R. Part 583.

12. Unless otherwise authorized or exempt, U.S. persons, including U.S. companies and foreign persons in the United States, are prohibited from dealing with SDNs and their property and interests in property. 31 C.F.R. § 583.201(a). In particular, these prohibitions apply to U.S. persons making "any contribution or provision of funds, goods, or services by, to, or for the benefit of any person" designated as an SDN under EO 13818. *Id.* at § 583.201(b)(1).

4

13. On December 10, 2020, OFAC designated CHERIZIER as an SDN pursuant to EO 13818.

## THE DEFENDANTS AND CO-CONSPIRATORS

14. _____ a Haitian national residing in Haiti, is a former Haitian police officer. As of the date of this Indictment, _____ is currently the spokesperson and recognized leader of Viv Ansanm.

15. RICHARDSON is a naturalized U.S. citizen from Haiti who resides in Fayetteville, North Carolina.

16. U.S. CO-CONSPIRATOR 1 is a naturalized U.S. citizen from Haiti who resides in, New York.

17. U.S. CO-CONSPIRATOR 2 is a naturalized U.S. citizen from Haiti who resides in Massachusetts.

18. HAITIAN CO-CONSPIRATOR 1 is a Haitian citizen who resides in Haiti.

19. HAITIAN CO-CONSPIRATOR 2 is a Haitian citizen who resided in Haiti until in or about the first half of 2024. HAITIAN CO-CONSPIRATOR 2 presently resides in North Carolina.

20. HAITIAN CO-CONSPIRATOR 3 is a Haitian citizen who resides in Haiti.

21. HAITIAN CO-CONSPIRATOR 4 is a Haitian citizen who resides in Haiti.

22. HAITIAN CO-CONSPIRATOR 5 is a Haitian citizen who resides in Haiti.

### The Defendants' Knowledge of U.S. Sanctions

23. _____ and RICHARDSON have at all times relevant to this Indictment had knowledge of _____ SDN designation and the sanctions against him. In particular,

and RICHARDSON have made statements acknowledging the sanctions against including:

a. On or about January 28, 2023,        acknowledged in a media interview that he was sanctioned, stating that "[i]t doesn't bother me because I don't travel, I don't have any goods, and any interest in foreign countries," including the United States.

b. On or about February 7, 2024,        stated that he was sanctioned and could not enter the United States because he was accused of committing human rights violations in Haiti, including participating in the 2018 La Saline massacre.

c. On or about May 28, 2024,        stated that he had been sanctioned because he had been accused of participating in the 2018 La Saline massacre.

d. On or about February 7, 2025, RICHARDSON stated that he knew about the sanctions against        and that, at        direction, he sends payments to        via intermediaries because        cannot personally pick up money transfers.

24. On or about October 21, 2022, RICHARDSON sent a picture to        that contained images of various world leaders, including a former U.S. president, and the text "RESOLUTION 2653." United Nations Security Council Resolution 2653 required "all Member

6

States" to impose sanctions, including restrictions on financial transactions, on         because of his involvement in human rights abuses in Haiti.

25. In addition,            's and RICHARDSON's manner of having U.S. persons transfer money to Haitian persons for            benefit, but not to            directly, corroborates their knowledge of the U.S. sanctions against

## THE CONSPIRACY

26. Beginning on or about December 10, 2020, and continuing through at least in or around January 2025, in the District of Columbia and elsewhere,            , RICHARDSON, and others known and unknown to the grand jury knowingly and willfully conspired:

   a. to provide, and cause U.S. persons, including U.S. financial institutions, to provide, goods, funds, and services to and for the benefit of            a Specially Designated National whose property and interests in property were blocked pursuant to EO 13818, without first having obtained the required license from OFAC, in violation of Title 50, United States Code, Section 1705; EO 13818; and Title 31, Code of Federal Regulations, Section 583.201; and

   b. to engage in transactions that evade and have the purpose of evading the prohibitions set forth in EO 13818, and Title 31, Code of Federal Regulations, Section 583.205(a), in violation of Title 50, United States Code, Section 1705.

### Objects of the Conspiracy

27. The objects of the conspiracy were, among others:

   a. to provide funding and services to            to facilitate the continued activities of his gang, G9 and Family, and the gang alliance Viv Ansanm,

7

which controls the majority of Port-au-Prince, Haiti through violence and extortion;

b. to evade the prohibitions of EO 13818 and the GMSR and the U.S. sanctions imposed on _____; and

c. to conceal certain of the acts committed in furtherance of the conspiracy and its purpose from U.S. law enforcement, U.S. money transmitting services, and others.

### Manner and Means of the Conspiracy

28. It was further a part of the conspiracy that _____ RICHARDSON, and other co-conspirators, known and unknown to the grand jury, used the following manner and means to achieve the goals of the conspiracy:

    a. _____ solicited money from members of the Haitian diaspora in the United States, including RICHARDSON, through both direct messaging applications and social media applications;

    b. U.S. and Haitian-based co-conspirators, including RICHARDSON, regularly communicated with _____ to determine what resources _____ needed to fund his gang activities;

    c. U.S. and Haitian-based co-conspirators, including RICHARDSON, collected funds from other U.S.-based individuals and sent them to other individuals in Haiti, intending to benefit _____

    d. _____ and U.S. and Haitian-based co-conspirators, including RICHARDSON, used third parties and other intermediaries and obfuscation

techniques when transmitting or transferring money to conceal involvement from money transmitters and law enforcement;

e. U.S. and Haitian-based co-conspirators, including RICHARDSON, sent images of receipts from money transfers of U.S. dollars from the United States to individuals in Haiti for            's benefit;

f.            and other co-conspirators, including RICHARDSON, arranged for the transportation of various goods from the United States to Haiti for            's benefit;

g.            and other co-conspirators, including RICHARDSON, concealed or deleted communications made in furtherance of the conspiracy; and

h. No person, including            and RICHARDSON, applied for or obtained the necessary licenses from OFAC to lawfully conduct the transactions set forth in this Indictment.

### Overt Acts in Furtherance of the Conspiracy

29. In furtherance of the conspiracy and to affect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

a. Between on or about September 27, 2021, and on or about October 10, 2021, RICHARDSON communicated with            telling him that RICHARDSON had purchased            a phone plan with a Haitian telecommunications company and sent $25 to            so they could communicate directly.[1]

---

[1] Unless otherwise noted, all amounts are in U.S. Dollars.

9

  b. On or about September 27, 2021, RICHARDSON sen  a photograph of a receipt from MONEY TRANSFER COMPANY 1, in which RICHARDSON sent $2,974 to HAITIAN PERSON 1 for the benefit of

  c. On or about October 6, 2021, RICHARDSON sent  a photograph of a receipt from MONEY TRANSFER COMPANY 1, in which RICHARDSON sent $1,539 to HAITIAN PERSON 1 for the benefit of

  d. On or about October 9, 2021, RICHARDSON sent  a message, stating "I have some money left. I am trying to do my calculation to see how I can send it to you."

  e. On or about October 12, 2021, RICHARDSON sent  a photograph of a receipt from MONEY TRANSFER COMPANY 1, in which CANADIAN PERSON 1 sent $4,800 to HAITIAN PERSON 2 for the benefit

  f. On or about October 17, 2021, RICHARDSON sen  a message, stating that he had sent (  $25 and that he "paid to add minutes so you can set up an international plan on the phone, so you can call me directly and you don't get charged."

  g. On or about March 11, 2022, U.S. CO-CONSPIRATOR 1 sent  a photograph of a receipt from MONEY TRANSFER COMPANY 2, in which U.S. CO-CONSPIRATOR 1 sent $163 to HAITIAN CO-CONSPIRATOR 1 for the benefit of

10

h. On or about May 20, 2022, RICHARDSON sent a voice memo to _____ asking him for a name "who to send money to," since RICHARDSON "usually use[s] the services of someone who takes the money from me and takes the money to Haiti," but the person RICHARDSON normally used was not responding.

i. On or about May 21, 2022, RICHARDSON sent _____ a photograph of a receipt from MONEY TRANSFER COMPANY 1, in which RICHARDSON had sent $101.50 to HAITIAN CO-CONSPIRATOR 1 that same day.

j. On or about May 21, 2022, RICHARDSON sent a voice memo to _____ stating that "[t]he guy that used to bring the money to Haiti has not replied to my friend yet and I know you have an emergency. The guy who used to bring money to Haiti has not yet replied to my friend and I wanted to give him the money in Haiti. I am going to have to transfer the money although you will lose money because of the transfer fees. I know the transfer kiosks will take their cut. Give me a name of a recipient to receive the funds. Do you want me to use [HAITIAN CO-CONSPIRATOR 1]."

k. On or about May 21, 2022, _____ sent a voice memo to RICHARDSON, stating "what we have to do now is give the guys the means. I am going to call them and tell them Friday. Now I am out on the streets taking care of a lot of things... If anything, I am the one that is thankful for everything you have done for me. You are always there for me and for anything that I have needed, you have been there for me."

11

l.  On or about June 3, 2022, RICHARDSON forwarded a voice memo to that HAITIAN CO-CONSPIRATOR 3 sent to RICHARDSON. In that message, HAITIAN CO-CONSPIRATOR 3 stated to RICHARDSON that "I am going to ask my assistant whether he or she has an account in U.S. dollars and then I will have my assistant meet with BBQ, and then, BBQ will have to meet me with his delegation. From that meeting, they will make plans to move because the people are suffering, and they have to free the people to give [assassinated former Haitian president] Jovenel justice. I am going to give my assistant your number so he will message you privately. Everything you are going to send to Haiti, you will send in U.S. dollars. I want the people in Haiti to give me whatever you send in U.S. dollars, that is why I want you to use my assistant's account, because it is in U.S. dollars... When we receive the money in U.S. dollars, we can do more with it. For example, I have a debt of $600 U.S. dollars."

m.  On or about June 3, 2022, RICHARDSON forwarded a voice memo to that HAITIAN CO-CONSPIRATOR 4 sent to RICHARDSON. In that message, HAITIAN CO-CONSPIRATOR 4 told RICHARDSON that "[y]our role in the diaspora is to push initiatives to help the cause... I have a bank account with [Financial Institution 1], which is blocked, and I will make sure they unblock it because when we receive the U.S. dollars on that account, they will give it to us in U.S. currency. . . . When the money is wired to the account, you can take it in U.S. dollars. I have two accounts, one in dollars and another in Gourdes, but I will need some money to unblock the U.S. dollar

12

account. If I have backup, we will take the power and you will be able to come back to your country. You will need to serve in the new government...."

n. On or about June 4, 2022, RICHARDSON forwarded a voice memo to that HAITIAN CO-CONSPIRATOR 4 sent to RICHARDSON. In that message, HAITIAN-CO-CONSPIRATOR 4 stated that the "Administrator of International Finance Committee is [HAITIAN CO-CONSPIRATOR 3], our Haitian revolutionary group ... [RICHARDSON] is a funder and needs vehicles, weapons, money and prayers."

o. On or about June 4, 2022, RICHARDSON forwarded a voice memo to that an unknown Haitian individual sent to RICHARDSON. In that message, the unknown Haitian individual stated that the "Head of operation is a military guy. His name is [HAITIAN CO-CONSPIRATOR 5]. He has an account in U.S. dollars. I am going to give him your number and he will get in touch with you. Use his account for anything you send to Haiti. In the meantime, they are working to set up the organization's account. The guys are now going to say hi to you."

p. On or about June 4, 2022, RICHARDSON forwarded another voice memo to that HAITIAN CO-CONSPIRATOR 5 had sent to RICHARDSON. In that message, HAITIAN CO-CONSPIRATOR 5 stated "my name is [HAITIAN CO-CONSPIRATOR 5]. I am the one who will send you the account number."

q. On or about June 4, 2022, RICHARDSON forwarded a voice memo to that HAITIAN CO-CONSPIRATOR 3 sent to RICHARDSON.

In that message, HAITIAN CO-CONSPIRATOR 3 stated that "[w]e want to start a revolution in Haiti and are trying to collect funds. There are two ways to do this. One is through Haitians living abroad and another is Haitians living inside Haiti. For Haitians living abroad, our proposition is to have 1,000 individuals each give $20 or having 1,000,000 Haitians abroad each give $1 dollar. For Haitians living inside Haiti, we propose to collect money from 1,000 people in each department. Each of these 1,000 people per department should give 5,000 Gourdes. With this money, they can buy pick-up trucks, weapons, ammunition, clothing to include t-shirts, boots, and hats. We want to change everything in Haiti."

r. On or about June 10, 2022, _____ sent a voice memo to HAITIAN CO-CONSPIRATOR 2, while HAITIAN CO-CONSPIRATOR 2 was in Haiti, stating "one of my guys got shot in the stomach and died. That is why I am checking on you right now, because I need the things."

s. On or about June 22, 2022, HAITIAN CO-CONSPIRATOR 2 sent a voice memo to _____ stating "everything is here, on Friday I will bring them to you. You said you will take all of them, but once I give them to you, I do not know who you will get in contact with to get the rest of them. And also, there are barricades in the area. I do not know how you will manage to get them." Later that same day, _____ responded in a voice note stating "brother, have you forgotten how much money you are holding for me? You are holding four long sleeve shirts for me and a number of grains."

14

t. On or about June 25, 2022, RICHARDSON forwarded a voice memo to ▬▬▬▬ that an unidentified individual sent to RICHARDSON. In that message, the unidentified individual stated to RICHARDSON that "we have soldiers. Exactly what we need are weapons and vehicles. We have a lot of soldiers. We just had a meeting, and all of our soldiers are ready. We are in condition to deploy. We started our preparation in March and we have everything on video. I was talking to a guy named Vieux who participated in the Vietnam war and promised to send me a lot of stuff. Vieux made me believe that he had equipment, but he never delivered on his promise. I also said all of this to Coq. I prepared a budget and sent it to the guy. The budget covers equipment for 1,000 soldiers. I have everything planned, all we need are vehicles and weapons for 1,000 soldiers to attack."

u. On or about July 6, 2022, ▬▬▬▬ sent a voice memo to HAITIAN CO-CONSPIRATOR 2, stating that he was in a tough spot and needed the money back. HAITIAN CO-CONSPIRATOR 2 responded with a voice memo to ▬▬▬▬ stating "that is not the way things are done. You know arms deals are not done that way. If you do not have the weapons, just bring the money back." On or about July 7, 2022, ▬▬▬▬ responded with a voice memo stating "okay, if you cannot do business right now, make sure the resources get back to me."

v. On or about July 7, 2022, RICHARDSON sent a message to ▬▬▬▬ stating "$125 dollars, ok. $125 dollars plus 90. You are better at adding numbers than me. $215 dollars, ok? I will pay the fees."

15

w. On or about July 7, 2022, RICHARDSON sent a voice memo to   stating that there were two women who each gave RICHARDSON $50, which brings the total to $190 that RICHARDSON has for

x. On or about July 10, 2022, RICHARDSON sent a voice memo to   stating that RICHARDSON had $210 collected, and RICHARDSON stated "you will tell me what to do."

y. On or about July 31, 2022, RICHARDSON forwarded a voice memo to   hat RICHARDSON had previously sent to an unknown third party. In that voice memo, RICHARDSON stated that "the head of G9 is a close friend of mine. I grew up with BBQ. I am not afraid of saying that the head of G9 is a close friend of mine, he is like a brother to me. I grew up with BBQ. I speak daily with BBQ. As a matter of fact, I spoke with him this morning. People cannot scare me because I live in the U.S. and I am not trying to conspire against the U.S. Fuck you America. I am defending my country (Haiti), which the U.S. Embassy is destroying. If I had the means I would have provided the guys with the means. If I was facing those people, I would tell them in their face that I know what is waiting for me. Two things are waiting for me, prison, or death. Fuck you America and fuck you U.S. Embassy."

z. On or about September 12, 2022, RICHARDSON sent $50 to HAITIAN CO-CONSPIRATOR 5 via MONEY TRANSFER COMPANY 1 for the benefit of

aa. On or about October 8, 2022, RICHARDSON sent $50 to HAITIAN CO-CONSPIRATOR 5 via MONEY TRANSFER COMPANY 1 for the benefit of

bb. On or about October 12, 2022,           sent a message to U.S. CO-CONSPIRATOR 2, stating that he           cannot go out, so he was sending his wife's name, HAITIAN PERSON 3, for U.S. CO-CONSPIRATOR 2 to send money to her in Port-au-Prince, Haiti through MONEY TRANSFER COMPANY 3.

cc. On or about November 29, 2022, RICHARDSON sent $91 to HAITIAN CO-CONSPIRATOR 5 via MONEY TRANSFER COMPANY 1 for the benefit of

dd. In or around March 2024, at           direction, members of the Haitian diaspora in the United States made three wire transfers in the amount of $13,000, $6,000, and $9,000 to persons in Haiti, who then withdrew cash and provided the funds to

ee. On or about September 7, 2024, RICHARDSON sent a voice memo to          , stating that he needs to do something, the peace agreement with the Haitian government is not working, and his savings are not doing well. RICHARDSON then noted that he only has $35,000 in his savings account remaining out of the $70,000 he had previously.

ff. On or about September 7, 2024, RICHARDSON sent a voice memo to           stating that RICHARDSON is unfortunately not in Haiti to fight alongside           but he will do whatever is in his power to support

17

. RICHARDSON then stated that if it were possible, he would finance all of             projects and provide him with all the heavy weapons to win the fight.

gg. On or about September 7, 2024, RICHARDSON sent a voice memo to             stating that he believes in             fight for Haiti and that, for that reason, he just spoke with U.S. PERSON 2 about how U.S. PERSON 2 is ready to "invest" $50,000.

hh. On or about December 11, 2024,             sent a voice memo to RICHARDSON, expressing his gratefulness for all of the sacrifices RICHARDSON has made for (

ii. On or about January 14, 2025, RICHARDSON sent a message to U.S. PERSON 1, asking U.S. PERSON 1 to send $100 to an unnamed individual in Haiti.

jj. On or about January 19, 2025, RICHARDSON sent a message to a group chat including             stating that MONEY TRANSFER COMPANY 4 had blocked RICHARDSON, and that they would use MONEY TRANSFER COMPANY 3 to send money.

kk. At no time during the conspiracy did any person apply for or obtain the necessary licenses from OFAC, located in the District of Columbia, to provide money or services to (             a sanctioned individual.

**(Conspiracy to Violate the International Emergency Economic Power Act,** in violation of Title 50, United States Code, Section 1705; Title 31, Code of Federal Regulations, Sections 583.201 & 205)

18

## FORFEITURE ALLEGATIONS

30. The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

31. Upon conviction of the offenses alleged in Count One of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

## MONEY JUDGMENT

32. The United States will seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

## SUBSTITUTE ASSETS

33. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section

2461(c).

A TRUE BILL

FOREPERSON

JEANINE FERRIS PIRRO
United States Attorney

By: _____
THOMAS GILLICE
Deputy Chief, National Security Section